16 P.3d 931

STATE of Idaho, Plaintiff–Respondent,

v.

Josh M. CLARK, Defendant–Appellant.

No. 26676.

Supreme Court of Idaho,
Boise, November 2000 Term.

Dec. 28, 2000.

Alan E. Trimming, Ada County Public Defender; David William Simonaitis, Deputy Public Defender, Boise, for appellant. David W. Simonaitis argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

WALTERS, Justice.

Josh M. Clark entered a conditional plea of guilty to a charge of misdemeanor battery, reserving the right to appeal the magistrate's denial of his motion to dismiss the charge. On appeal, Clark asserts that the action should have been dismissed due to the deprivation of his statutory right to a speedy trial. This Court agrees with Clark's position. Accordingly, we reverse the magistrate court's ruling and direct the magistrate to dismiss the charge.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began on January 10, 1997, when Josh Clark was charged in Boise with misdemeanor battery under I.C. § 18–903. The charge stemmed from an incident in which Clark allegedly hit and choked Julie French, who is Clark's ex-wife. Clark was arraigned before a magistrate in Ada County on April 16, 1997, and entered a plea of not guilty. The case was scheduled for pre-trial conference on August 19, 1997, and for a jury trial beginning September 8, 1997. At the August 19 pre-trial conference, however, the State requested a continuance to accommodate the complaining witness, French. The prosecutor informed the magistrate that French lived in Montana and was scheduled to take "board exams" on September 8. The prosecutor also stated that French could not travel to Boise for a trial between September 20 and October 6, 1997, because of teaching obligations. Clark's counsel objected to the continuance, asserting his client's right to a speedy trial. The magistrate vacated the September 8 trial date over Clark's objection and reset the trial for September 22, 1997, stating that French would have to take measures to make herself available at that time. As was usually the practice in the magistrate division in Ada County, there were a number of other cases calendared for trial on the same date before the same magistrate.

On September 18, the magistrate again took up the matter of the trial date on the State's motion. Because Clark's trial did not have a first priority setting among the cases scheduled for trial on September 22, the State requested that the magistrate either give Clark's trial top priority on September 22 or move the trial to a date on which it would have priority over the other cases. The State emphasized that it did not want French to have to travel from Montana to Boise if the case could not be tried on the scheduled date. Clark's counsel, again asserting his client's right to a speedy trial, responded that the case had previously been reset to accommodate French, and that he

was prepared to try the case on September 22.

Upon consideration, the magistrate concluded that giving Clark's trial top priority on September 22 was impossible because the court had fifteen to twenty cases set for jury trial on that date, including one criminal case with a higher priority. Noting that the other criminal matter was likely to go to trial, the magistrate continued Clark's trial until December 15, 1997—the first available date when Clark's case could have top priority. The parties later stipulated that the magistrate's prediction turned out to be incorrect, as the other case with higher priority on September 22 was settled on the day of trial.

Clark filed a "Renewed Demand for Speedy Trial" on October 7, 1997. In this motion, Clark requested a trial date prior to October 16, which was the final day of the six-month limit established by I.C. § 19–3501(3) for trials in misdemeanor cases. The magistrate, however, citing "court congestion," denied the motion. Clark then moved to dismiss the case based on a violation of his right to a speedy trial. The magistrate conducted a hearing on December 15 and, stating that the volume of the court's caseload made it impossible to afford Clark his right to a trial within the statutory six-month period, denied Clark's motion to dismiss.

Clark subsequently entered a guilty plea, reserving his right to appeal the speedy trial issue. The magistrate entered an order withholding judgment and placed Clark on probation. Clark timely appealed the denial of his motion to dismiss. The decision of the magistrate was affirmed by the district court and later by the Court of Appeals. This Court granted Clark's petition for review under I.A.R. 118.

The sole issue on appeal in this case is whether good cause existed for the delay in scheduling Clark's case for trial.

## DISCUSSION

### A. Standard of Review

 In cases that come before this Court on a petition for review of a Court of Appeals' decision, this Court gives serious consideration to the opinions of the Court of Appeals but directly reviews the decisions of the trial court. *See Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997) (citing *Schiewe v. Farwell*, 125 Idaho 46, 49, 867 P.2d 920, 923 (1993)). Likewise, upon review of a case appealed from a district court's appellate review of a magistrate's decision, this Court makes an independent appellate review of the magistrate's decision, after giving due regard to the district court's ruling. *See Ausman v. State*, 124 Idaho 839, 840, 864 P.2d 1126, 1127 (1993). Whether there was an infringement of Clark's statutory right to a speedy trial presents a mixed question of law and fact. The Court will defer to the magistrate's findings of fact if supported by substantial and competent evidence. *See McNelis v. McNelis*, 119 Idaho 349, 351, 806 P.2d 442, 444 (1991). This Court, however, exercises free review of the trial court's conclusions of law. *See Clements Farms, Inc. v. Ben Fish & Son*, 120 Idaho 185, 188, 814 P.2d 917, 920 (1991). The Court may substitute its view for that of the trial court on a legal issue. *See Idaho Appellate Handbook*, Standards of Appellate Review in State and Federal Courts, § 4.2 (1996).

### B. Good Cause Under I.C. § 19–3501

 Criminal defendants are guaranteed the right to a speedy public trial under the Sixth Amendment to the United States Constitution and under Article I, section 13 of the Idaho Constitution. In Idaho, these constitutional provisions have been supplemented by legislation that sets specific time limits within which a criminal defendant must be brought to trial. *See* I.C. § 19–3501 (2000); *see also Schrom v. Cramer*, 76 Idaho 1, 275 P.2d 979 (1954). Indeed, the operative statute was enacted in 1864 while Idaho was still a territory and was in force and effect at the time of the adoption of our constitution. *See id.* at 5, 275 P.2d at 981. The current version of Idaho Code section 19–3501 states:

The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

1. When a person has been held to answer for a public offense, if an indictment

or information is not found against him and filed with the court within six (6) months from the date of his arrest.

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

3. If a defendant, charged with a misdemeanor offense, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the defendant enters a plea of not guilty with the court.

Thus, under I.C. § 19–3501, criminal defendants are given additional protection beyond what is required by the United States and Idaho Constitutions. *See State v. Brooks,* 109 Idaho 726, 728, 710 P.2d 636, 638 (Ct. App.1985). The statute mandates that unless the State can demonstrate "good cause" for a delay greater than six months, the court must dismiss the case.

In *Barker v. Wingo,* the United States Supreme Court, recognizing the existence of time-sensitive statutes and procedural rules similar to I.C. § 19–3501, chose to adopt a flexible approach for assessing whether the right to speedy trial has been unconstitutionally denied. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Court adopted a balancing test in which the conduct of the defendant and the prosecution were to be weighed and identified four primary factors the courts should evaluate in determining whether a particular defendant has been deprived of his speedy trial right: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant. *See Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. This approach has been adopted in Idaho for determining whether a speedy trial violation has occurred under the Idaho Constitution. *See State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975).

■ Whether a "good cause" determination under I.C. § 19–3501 contemplates an analysis of the factors enunciated in *Barker,* however, has been a point of contention in this Court for a number of years. As the Court noted some years ago in *State v. Cotant,*

> [o]ne might question why the *Barker* test is used to analyze statutory speedy trial rights when I.C. § 19–3501 mentions only "good cause." *Cf. State v. Hobson,* 99 Idaho 200, 202, 579 P.2d 697, 699 (1978). Although the reason for the delay and prejudice to the defendant are logically relevant to whether good cause exists, the other two *Barker* factors are not. Nonetheless, we will adhere to recent precedent for the time being until this issue is squarely presented to us.

123 Idaho 787, 788, n. 2, 852 P.2d 1384, 1385, n. 2 (1993).

In *State v. Hobson,* the Court declined to apply the *Barker* factors to determine whether "good cause" existed for the delay in the defendant's trial, stating that *"Barker v. Wingo . . .* is not applicable when I.C. § 19–3501 has been violated." 99 Idaho 200, 202, 579 P.2d 697, 699. Since *Hobson,* however, this Court has applied the *Barker* criteria to a dismissal request grounded upon a violation of the speedy trial statute. *See State v. Russell,* 108 Idaho 58, 696 P.2d 909 (1985); *State v. Sindak,* 116 Idaho 185, 774 P.2d 895 (1989); *Cotant,* 123 Idaho at 788, 852 P.2d at 1385. As a result, trial courts and our Court of Appeals have resorted to using the *Barker* factors to determine whether "good cause" exists under the statute even though there is (1) precedent in *State v. Hobson* indicating that the *Barker* factors should not be used in cases involving a speedy trial claim under I.C. § 19–3501; and (2) a reference in *Cotant* that at least two of the factors appear irrelevant to the discussion of whether "good cause" exists under the statute. As the Court of Appeals stated in *State v. Naccarato:*

> In light of the interpretation placed upon I.C. § 19–3501 by our Supreme Court . . . the determination of "good cause" under the statute must be made by reference to *Barker.* We recognize that our Supreme Court may be amenable to revisiting the question of why the *Barker* test is used to analyze statutory speedy trial rights when I.C. § 19–3501 mentions only "good cause." However, adhering to precedent, we must

continue to uniformly apply the balancing test from *Barker, supra,* to evaluate "good cause" sufficient to excuse a violation of speedy trial rights under I.C. § 19–3501 as well as under the federal constitution.

126 Idaho 10, 13, 878 P.2d 184, 187 (Ct.App. 1994) (citations omitted).

Because the issue is squarely presented to us in this case, we take the opportunity to address what "good cause" means in the context of I.C. § 19–3501.

Idaho is not the only state that has augmented the federal and state constitutional speedy trial guarantees with procedural rules or legislation. A number of other states have enacted similar statutes or rules providing specified time limits within which a criminal defendant must be brought to trial. *See Barker v. Wingo,* 407 U.S. at 523, 92 S.Ct. at 2188; Note, *The Right to a Speedy Criminal Trial,* 57 Colum. L.Rev. 846, 855 (1957). Such provisions generally limit the time in which an indictment must be found or information filed, or, similar to Idaho's provision, limit the time in which the case must be brought to trial after the indictment has been presented or the information filed, or after the accused has been taken into custody. *See* 21A Am.Jur.2d *Criminal Law* § 1030 (1998). Like Idaho, several other states even have statutes or rules that prescribe time limits for misdemeanor prosecutions. *See, e.g.,* Mont.Code Ann. § 46–13–201(2) (1999) ("The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed if a defendant whose trial has not been postponed upon his application is not brought to trial within 6 months after entry of plea upon a complaint, information, or indictment charging a misdemeanor.").

Under these various statutes and rules, where the delay in bringing a criminal defendant to trial is "excusable," occasioned by "exceptional circumstances," or, like I.C. § 19–3501, where there is "good cause" for the failure to try the accused within the applicable statutory period, the delay is generally not violative of the accused's speedy trial rights. *See* 22A C.J.S. *Criminal Law* § 604 (1989). An examination of those states in which "good cause" is the determinative factor reveals a diverse array of methods for

examining the "good cause" analysis in relation to the factors mentioned in *Barker v. Wingo.*

Some courts appear to include all the *Barker* factors as relevant to whether "good cause" exists under their state's particular rule or statute. *See, e.g., State v. Friberg,* 435 N.W.2d 509, 513 (Minn.1989) ("This court has consistently used the *Barker* factors to determine whether there was 'good cause' for a greater than sixty-day delay in felony cases and we see no reason not to require the same analysis in misdemeanor cases."); *State v. Condran,* 951 S.W.2d 178, 187 (Tex.App.1997) ("*Barker* is broad enough that even if a state legislature has promulgated a rule requiring the state to proceed to trial within a specified time, the courts can still utilize the *Barker* factors...."); *Ex parte Martin,* 6 S.W.3d 524, 528 (Tex.Crim.App.1999) ("Today we adopt a *Barker*-like, totality-of-the-circumstances test for the determination of good cause....").

Other courts, however, have specifically noted that a "good cause" determination can be made without reference to the factors mentioned in *Barker.* For instance, when discussing the applicability of the *Barker* factors to the Montana misdemeanor speedy trial statute, the Montana Supreme Court stated that:

[t]he State would have this Court impose a speedy trial constitutional analysis in determining whether "good cause" was met based on the six-month statutory deadline. The speedy trial tests, however, apply only in the case of felonies, and we would be inclined to apply them to misdemeanors only if a statute did not exist that was even more restrictive than the speedy trial tests. Here, the statutory deadline set forth in section 46–13–201(2) is more strict than any constitutional analysis would be required to be and we simply use the statute as containing the sole standard of whether "good cause" for the delay has been shown.

*State v. Ronningen,* 213 Mont. 358, 691 P.2d 1348, 1350 (1984).

Still other courts focus their analysis on a particular factor mentioned in *Barker* a fac-

tor we believe lies at the heart of a good cause determination under I.C. § 19–3501: the reason for the delay. As the Iowa Supreme Court stated in *State v. Nelson,* "if the reason for the delay is sufficient the other factors are not needed. If the reason for the delay is insufficient the other factors will not avail to avoid dismissal." 600 N.W.2d 598, 601 (Iowa 1999) (citations omitted).

■ Upon careful consideration of the relevant authorities, we believe that a thorough analysis of the reasons for the delay represents the soundest method for determining what constitutes good cause. We therefore conclude that good cause means that there is a substantial reason that rises to the level of a legal excuse for the delay. *See State v. Johnson,* 119 Idaho 56, 58, 803 P.2d 557, 559 (Ct.App.1990); *State v. Stuart,* 113 Idaho at 494, 496, 745 P.2d 1115, 1117 (Ct.App.1987). Because there is not a fixed rule for determining good cause for the delay of a trial, the matter is initially left to the discretion of the trial court. *See Johnson,* 119 Idaho at 58, 803 P.2d at 559; *Naccarato,* 126 Idaho at 13, 878 P.2d at 187; *see also People v. Johnson,* 26 Cal.3d 557, 162 Cal.Rptr. 431, 606 P.2d 738, 746 (1980); *Gallimore v. State,* 944 P.2d 939, 943 (Okla.Crim.App.1997).

But as the Iowa Supreme Court noted in *State v. Petersen,* the reason for the delay "cannot be evaluated entirely in a vacuum." 288 N.W.2d 332, 335 (Iowa 1980). The good cause determination may take into account the factors listed in *Barker.* The *Barker* factors, however,

> considered only as surrounding circumstances ... are important, if at all, only insofar as they bear on the sufficiency of the reason itself. The shortness of the period, the failure of the defendant to demand a speedy trial, and the absence of prejudice are legitimate considerations only insofar as they affect the strength of the reason for delay. This means that, to whatever extent the delay has been a short one, or the defendant has not demanded a speedy trial, or is not prejudiced, a weaker reason will constitute good cause. On the other hand, if the delay has been a long one, or if the defendant has demanded a speedy trial, or is prejudiced, a stronger

reason is necessary to constitute good cause.

*Id.*

■ Thus, the ultimate question of whether legal excuse has been shown is a matter for judicial determination upon the facts and circumstances of each case. *See Johnson,* 119 Idaho at 58, 803 P.2d at 559; *Stuart,* 113 Idaho at 496, 745 P.2d at 1117. A trial judge does not have unbridled discretion to find good cause, however, and on appeal we will independently review the lower court's decision. *See Johnson,* 119 Idaho at 58, 803 P.2d at 559; *Stuart,* 113 Idaho at 496, 745 P.2d at 1117; *Naccarato,* 126 Idaho at 13, 878 P.2d at 187.

## C. The Magistrate's Determination

■ We conclude that the magistrate erred by improperly denying Clark's motion to dismiss for violation of his speedy trial rights under I.C. § 19–3501(3). In this case, the magistrate granted a continuance beyond the statutory limit without a showing of good cause by the State. The State argues that the delay was attributable to witness unavailability, which it asserts is a valid reason justifying the continuance of the trial date. We disagree, not because unavailability cannot substantiate a finding of good cause, but because French does not qualify as an unavailable witness.

The State equates French's unavailability with that of a "missing witness," which the Supreme Court in *Barker* identifies as a valid reason to justify an appropriate delay. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. But the record in this case indicates that French was neither "missing" in any sense of the word, nor was she actually "unavailable." There is an enormous difference between being inconvenienced and being unavailable. True unavailability suggests an unqualified inability to attend, while inconvenience merely implies that as in a case such as this, attendance at trial would be burdensome. Here, French could have attended the September 22 trial, and in fact was compelled to do so by the magistrate's previous order. The State, however, not wishing to have French travel from out of state only to face

postponement of the trial, requested that Clark's trial either be given top priority on September 22 or moved to a date in which the trial would have first priority. But the desire to accommodate French's schedule cannot be said to comprise a reason that rises to the level of a legal excuse for the delay. The Court recognizes that French is both a witness and the victim in this case and is thus conscious of her right to attend the trial, as well as the importance of her presence. *See* Idaho Const. art. I, § 22 (" 'Victims' Rights Amendment"). But French's right to be present at the proceeding should not overshadow Clark's right to a speedy trial, which is a fundamental right protected by the United States and Idaho Constitutions and by I.C. § 19–3501. *See Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *State v. Lindsay,* 96 Idaho 474, 475, 531 P.2d 236, 237 (1975). Accordingly, we conclude that Clark's right to a speedy trial under I.C. § 19–3501(3) has been abridged. The State has not shown any additional justification other than its wish to make concessions for French's schedule for its failure to prosecute Clark during the mandatory six-month period.

 What is more disturbing about Clark's case, however, are the magistrate's statements concerning "court congestion," which the State alternatively argues should justify the continuance. Rather than address whether the State in this case could show legal excuse for the eight-month delay in Clark's trial, the magistrate erroneously concluded that the court's congested calendar prevented a first priority trial setting within the six-month limit. Upon addressing Clark's motion on December 15, the magistrate stated that "there is present Idaho case law, Supreme Court decisions, that specifically tell me that as a consequence of court congestion there basically isn't a right to a speedy trial." This statement unequivocally suggests that court congestion may substitute as good cause for a delay beyond the six-month limit, even if the State cannot demonstrate adequate justification for the delay. We strongly disagree. Contrary to the magistrate's belief, this Court has never stated that criminal defendants do not have a speedy trial right because of court conges-

tion. When examining the reasons for the delay, this Court has consistently maintained that overcrowded courts are to be a "neutral factor" which " 'nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' " *See Cotant,* 123 Idaho at 789 n. 3, 852 P.2d at 1386 n. 3 (quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192); *Russell,* 108 Idaho at 61, 696 P.2d at 911.

## CONCLUSION

Because good cause for the delay was not shown by the State, we hold that the magistrate erred in denying Clark's motion to dismiss pursuant to I.C. § 19–3501(3). The case is remanded with directions to the magistrate to grant Clark's motion and to dismiss the charge.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL concur.